**Kenneth ADAMS et al., Plaintiffs,**

**v.**

**Elliot L. RICHARDSON, Individually, and as Secretary of the Department of Health, Education, and Welfare, et al., Defendants.**

**Civ. A. No. 3095–70.**

United States District Court, District of Columbia.

Feb. 16, 1973.

Joseph L. Rauh, Jr. and John Silard, Washington, D. C., for plaintiffs.

Joseph Hannon, Asst. U. S. Atty., Washington, D. C., Robert Beale, Bateman, West & Beale, Newport News, Va., for defendants.

## DECLARATORY JUDGMENT AND INJUNCTION ORDER

JOHN H. PRATT, District Judge.

This cause came before this Court upon plaintiffs' motion for summary judgment and defendants' combined motion to dismiss and cross-motion for summary judgment. Upon the entire record before this Court including the pleadings, depositions and affidavits, and upon the Memorandum Opinion of this Court dated November 16, 1972, 351 F. Supp. 636, it is hereby ORDERED that plaintiffs' motion is granted, defendants' motions are denied and plaintiffs are granted the following declaratory

and injunctive relief on each of the six separate causes of action:*

## I. *HEW's Functions Under Title VI of the Civil Rights Act of 1964 Concerning Public Higher Education*

### A. *Declaratory Judgment*

(1) In January, 1969 HEW concluded that the State of Louisiana was operating a racially segregated system of higher education in violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.). Between January, 1969 and February, 1970, HEW made the same administrative determination regarding the systems of higher education of the states of Mississippi, Oklahoma, North Carolina, Florida, Arkansas, Pennsylvania, Georgia, Maryland and Virginia. In letters to the ten states, HEW requested each of them to submit a desegregation plan within 120 days or less. Appendix A gives the dates of letters to each of said states.

(2) The states of Louisiana, Mississippi, Oklahoma, North Carolina and Florida have totally ignored HEW's requests of three to four years ago and have never submitted a desegregation plan.

(3) Although the other five states, Arkansas, Pennsylvania, Georgia, Maryland and Virginia, submitted to HEW between 24 and 38 months ago desegregation plans which were found unacceptable, HEW has failed formally to comment on any of these submissions in the intervening years. Appendix A lists the dates of submission of these five states.

(4) HEW has not commenced an administrative enforcement action against any of these ten states. Nor have these matters been submitted to the Justice Department for the filing of suits against any of the ten states.

(5) HEW has advanced and continues to advance Federal funds in substantial amounts for the benefit of institutions of higher education in the ten states.

(6) HEW has attempted to justify its failure to commence enforcement action on the grounds that negotiations with the ten states are still pending, the desegregation of state-wide systems is complex, and the Supreme Court standard of desegregation "at once" does not apply to public higher education.

(7) The time permitted by Title VI of the Civil Rights Act of 1964 to delay the commencement of enforcement proceedings against the ten states for the purpose of securing voluntary compliance has long since passed. The continuation of HEW financial assistance to the segregated systems of higher education in the ten states violates the rights of plaintiffs and others similarly situated protected by Title VI of the Civil Rights Act of 1964. Having once determined that a state system of higher education is in violation of Title VI, and having failed during a substantial period of time to achieve voluntary compliance, defendants have a duty to commence enforcement proceedings.

### B. *Injunction*

(1) Defendants, their successors, agents and employees, are required and enjoined within 120 days from the date of this Order to commence enforcement proceedings by administrative notice of hearing, or to utilize any other means authorized by law, in order to effect compliance with Title VI by the states of Louisiana, Mississippi, Oklahoma, North Carolina, Florida, Arkansas, Pennsylvania, Georgia, Maryland and Virginia.

(2) Defendants, their successors, agents and employees, are required and enjoined to provide in verified form the following data to counsel for the plaintiffs on the dates indicated:

a. Within 150 days of the date of this Order, a report of all steps they

---

*Because of the time lag between the original date of the filing of this action and the date of this order, some of the evidence and specific information relating to compliance or non-compliance with Title VI may be somewhat out-of-date. The order should be read and interpreted with this consideration in mind.

have taken to comply with the injunctive provision set forth in the preceding paragraph, including a description of what action the Justice Department has taken in any public higher education violation defendants may have referred to that Department.

b. Every sixth month after the issuance of this Order for a period of three years, so as to permit evaluation of the reasons for any delays by defendants in bringing enforcement proceedings:

1. A description of each complaint (without identification of complainants) or other information of racial segregation or discrimination in public higher education received by defendants;

2. Whenever within 120 days of receipt of such complaint or other information no administrative determination as to racial segregation or discrimination was made by HEW, an explanation of the specific reasons for the failure to make such determination;

3. Based on each such complaint or or other information, any findings by defendants as to the presence or absence of racial segregation or discrimination and the specific reasons therefor;

4. Whenever enforcement proceedings have not been commenced within 90 days of an HEW finding of racial segregation or discrimination, the specific reasons for the failure by defendants to commence such proceeding.

II. *HEW's Functions Under Title VI of the Civil Rights Act of 1964 Concerning Renege or Noncompliance Districts*

A. *Declaratory Judgment*

(1) As of the school year 1970–71, 113 elementary and secondary school districts were found by HEW to have reneged on prior approved desegregation plans or to be otherwise out of compliance with Title VI.

(2) HEW referred eight of the 113 districts to the Justice Department (only three districts have been sued by the Justice Department) and initiated seven administrative enforcement proceedings. But although HEW has known of the noncompliance of most of the remaining 98 districts since early in the 1970–71 school year, some 74 school districts remain out of compliance with Title VI without the commencement of enforcement proceedings against them.

(3) These 74 noncomplying districts have received and continue to receive substantial Federal assistance from HEW.

(4) HEW has attempted to excuse its administrative inaction on the grounds that it is still seeking voluntary compliance through negotiation and conciliation.

(5) The time permitted by Title VI for securing voluntary compliance for these districts before commencing enforcement proceedings has long since passed. The continuation of HEW financial assistance to these noncomplying school districts violates the rights of plaintiffs and others similarly situated protected by Title VI of the Civil Rights Act of 1964. Having once determined that a school district is in violation of Title VI, and having failed during a substantial period of time to achieve voluntary compliance, defendants have a duty to commence enforcement proceedings.

B. *Injunction*

(1) Defendants, their successors, agents and employees, are required and enjoined within 60 days of the date of this Order to commence enforcement proceedings by administrative notice of hearing or to utilize any other means authorized by law, in order to effect compliance with Title VI by each of the school districts HEW found to be out of compliance with Title VI during the 1970–71 school year, unless defendants

thereafter and prior to this Court's November 16, 1972 Memorandum Opinion have made an administrative determination of compliance by the school district.

(2) Defendants, their successors, agents and employees, are required and enjoined to provide in verified form the following data to counsel for the plaintiffs on the dates indicated:

a. Within 150 days of the date of this Order, a report of all steps they have taken to comply with the injunctive provision set forth in the preceding paragraph, including a description of what action the Justice Department has taken concerning any school district defendants may have referred to the Department.

b. Every sixth month after the issuance of this Order for a period of three years, so as to permit evaluation of the reasons for any delays by defendants in bringing enforcement proceedings:

1. A description of each complaint (without identification of complainant) or other information of racial segregation or discrimination in public elementary and secondary schools received by defendants;

2. Whenever within 90 days of receipt of such complaint or other information no administrative determination as to racial segregation or discrimination was made by HEW, an explanation of the specific reasons for the failure to make such determination;

3. Based on each such complaint or other information, any finding by defendants as to the presence or absence of racial segregation or discrimination and the specific reasons therefor;

4. Whenever enforcement proceedings have not been commenced within 60 days of an HEW finding of racial segregation or discrimination, the specific reasons for the failure by defendants to commence such proceeding.

III. *HEW's Functions Under Title VI of the Civil Rights Act of 1964 Concerning Compliance by Public Educational Institutions With New Supreme Court Desegregation Decisions*

A. *Declaratory Judgment*

(1) In Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969), the Supreme Court required desegregation "at once" of all dual school systems. At the time of that decision (October 29, 1969), 87 school districts had HEW-approved desegregation plans which permitted desegregation to be postponed until September, 1970. Despite the Supreme Court's directive, HEW took no steps to compel desegregation in any of these 87 districts during the 1969–1970 school year.

(2) Following the decision of the Supreme Court in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), which enunciated "a presumption against schools that are substantially disproportionate in their racial composition" HEW identified 300 non-court order school districts with one or more schools composed mostly of local minority students.

(3) Initially, HEW eliminated 75 of the 300 districts from further consideration without any on-site investigation or communication with the districts because in HEW's judgment the racial disproportion of the schools in these districts was too small to constitute a violation of *Swann*. HEW then eliminated 134 of the remaining 225 districts from further consideration still without any on-site investigation or communication with the districts. At least 85 of these districts, which are listed in Appendix B, *infra*, have one or more schools substantially disproportionate in their racial composition (because at least a 20% disproportion exists between the per-

centage of local minority pupils in the schools and the percentage in the entire school district; many of these districts actually have a much greater disproportion). Nevertheless, none of these 85 school districts was required by defendants to justify the substantial racial disproportion in its schools.

(4) HEW mailed letters to the remaining 91 school districts in the summer of 1971, notifying them that additional desegregation steps may be required under the *Swann* decision. Of these 91 districts, HEW received desegregation plans acceptable to HEW from 37 districts, noticed three for administrative hearing, and found *Swann* "not applicable" to nine.

(5) Thus 42 districts, which are listed in Appendix C, *infra*, were deemed by HEW to be in presumptive violation of Swann and remain so more than a year later while HEW continues to review them. These 42 school districts have been receiving Federal funds from HEW throughout this period of over one year.

(6) With respect to the 85 school districts with one or more schools substantially disproportionate in racial composition, HEW's continuation of financial assistance thereto violates the rights of plaintiffs and others similarly situated protected by Title VI of the Civil Rights Act of 1964. Defendants, before advancing or continuing to advance Federal funds in violation of Title VI, have a duty to require districts presumptively in violation of *Swann* or other controlling Supreme Court decisions to explain or rebut such presumption.

(7) With respect to the 42 districts which HEW found in presumptive violation of *Swann* and Title VI in the summer of 1971, the time permitted by Title VI for securing voluntary compliance from these districts before commencing formal enforcement proceedings has long ago elapsed. The continuation of HEW's financial assistance to these school districts violates the rights of plaintiffs and others similarly situated protected by Title VI of the Civil Rights Act of

1964. Having determined that a school district is in presumptive violation of Title VI, and having failed during a substantial period of time to achieve voluntary compliance, then unless the presumption has been overcome by further information defendants have a duty to commence enforcement proceedings.

### B. *Injunction*

(1) Defendants, their successors, agents and employees, are required and enjoined within 60 days of the date of this Order to communicate with each of the 85 districts listed in Appendix B, putting them on notice to rebut or explain the substantial racial disproportion in one or more of the district's schools.

(2) Defendants, their successors, agents and employees, are required and enjoined within 60 days of the date of this Order to commence enforcement proceedings by administrative notice of hearing, or to utilize any other means authorized by law, in order to effect compliance with Title VI by each of the 42 school districts listed in Appendix C, unless prior to this Court's November 16, 1972 Memorandum Opinion defendants have made a final determination of compliance by the school district.

(3) Defendants, their successors, agents and employees, are required and enjoined to provide in verified form the following data to counsel for the plaintiffs on the dates indicated:

a. Within 150 days of the date of this Order, a report of all steps they have taken to comply with the injunctive provisions set forth in III B(1) and (2) above, including a description of what action the Justice Department has taken concerning any school district defendants may have referred to the Department.

b. Every twelfth month after the issuance of this Order for a period of three years, a list of all school districts in the 17 southern and border states whose percentage of local minority pupils in the last academic year was at least 20% disproportionate from the percentage of the

local minority pupils in the entire district, and all steps HEW has taken to require these districts to rebut or explain such substantial racial disproportion.

IV. *HEW's Functions Under Title VI of the Civil Rights Act of 1964 Concerning Vocational and Other Schools Administered by State Departments of Education*

A. *Declaratory Judgment*

(1) State departments of education in the 17 southern and border states administer or operate numerous vocational and other schools. In the latter category are schools for deaf, blind and mentally handicapped children.

(2) While apparently not a complete list, HEW did provide the names of 205 vocational schools, 28 schools for the blind and the deaf and certain other schools for the mentally handicapped administered by the departments of education in the 17 states.

(3) HEW does not have any student enrollment and faculty data by race for many of these schools but it did provide statistics of students and faculty in Louisiana's vocational schools which show seven schools as overwhelmingly black and 25 schools as overwhelmingly white. Many of the schools operated by state departments of education are obviously segregated.

(4) Prior to the filing of this suit, HEW had no comprehensive program of Title VI enforcement for such schools.

(5) After the filing of this suit, HEW announced a program to enforce Title VI with respect to state department-administered schools, but the program only affects vocational schools. As yet, HEW has scheduled no on-site reviews of the segregated vocational schools in the south.

(6) Federal funds have been distributed to most of these schools for years and HEW continues to give such Federal assistance.

(7) Defendants have a duty under Title VI of the Civil Rights Act of 1964 to implement an enforcement program adequate to secure Title VI compliance with respect to vocational and other schools administered or operated by State Departments of Education. Defendants have violated the rights of plaintiffs and others similarly situated protected by Title VI of the Civil Rights Act of 1964 by failing to implement such a program.

B. *Injunction*

(1) Defendants, their successors, agents and employees, are required and enjoined to implement without unreasonable delay an enforcement program adequate to secure Title VI compliance with respect to vocational and other schools administered or operated by State Departments of Education sufficient to assure their compliance with Title VI, including reporting and on-site reviews.

(2) Defendants, their successors, agents and employees, are required and enjoined to provide in verified form the following data to counsel for the plaintiffs on the dates indicated:

a. Within 150 days of the date of this Order, a report of all steps they have taken to comply with the injunctive provision set forth in the preceding paragraph.

b. Every twelfth month, after the issuance of this Order for a period of three years, a listing of:

   1. All schools administered or operated by State Departments of Education where HEW has found reason to believe or suspect that racial discrimination or segregation may be practiced;

   2. The date of each on-site investigation by HEW compliance officers at each of the schools listed in the preceding paragraph, or the reasons for HEW's failure to make such investigation;

3. The steps taken by HEW to secure compliance by such schools with Title VI and the Constitution.

V. *HEW's Functions Under Title VI of the Civil Rights Act of 1964 Concerning School Districts Subject to Court Desegregation. Orders*

A. *Declaratory Judgment*

(1) Some 640 school districts which receive HEW aid, including many of the largest school districts, are subject to school desegregation court orders in the 17 southern and border states.

(2) Shortly after the passage of the statute in 1964, HEW issued a regulation which, in effect, deemed a district in compliance if it were subject to a final desegregation order and provided assurance that it will comply with said order including any subsequent modification thereof.

(3) In 1968, Congress in amending § 2000d–5 of the statute, adopted the HEW regulation in part by providing that, for the purpose of determining whether an educational agency is in compliance with Title VI, compliance by such agency with a final court desegregation order shall be deemed to be compliance with said Title.

(4) Once a school district has been placed under a court desegregation order and gives assurance "on paper" that it is in compliance with such order, it is the practice of HEW to regard such school district as in compliance with Title VI. HEW does not monitor said school districts to determine whether or not the court order is being obeyed.

(5) HEW's justification for failure to monitor school districts under court order is allegedly based upon possible conflicts with the courts, possible conflicts with the Justice Department, and HEW's alleged lack of resources to provide systematic monitoring.

(6) HEW has advanced and continues to advance substantial Federal funds to school districts under court order.

(7) Compliance by school districts and other educational agencies under final order of a Federal court for the desegregation of the school or school system operated by such agencies, is by virtue of 42 U.S.C. § 2000d–5, to be deemed compliance with the provisions of Title VI. Until there has been a finding by the Court entering the order that its order has not been complied with, defendants are under no obligation to effectuate the provisions of Title VI through administrative or judicial enforcement proceedings. To the extent that their resources permit, defendants have the duty to monitor school districts under court order and to bring their finding to the attention of the court concerned. The responsibility for compliance by a school district and other educational agencies under court order rests upon the court issuing said order.

B. *Injunction*

(1) Defendants, their successors, agents and employees, are required and enjoined to monitor all school districts under court desegregation orders to the extent that their resources permit and to bring their findings to the attention of the court concerned.

(2) Defendants, their successors, agents and employees, are required and enjoined to provide in verified form the following data to counsel for the plaintiffs on the dates indicated:

Every sixth month after the issuance of this Order, for a period of three years, a listing of all school districts subject to court desegregation orders which were monitored by defendants; the finding of each court order violation; and the date on which the findings were presented to the appropriate court. Where any district subject to a court desegregation order was not monitored, the reasons for the failure of HEW to monitor the district.

VI. *Deferral and Recapture*

A. *Declaratory Judgment*

(1) Upon initiating an administrative enforcement proceeding under the Civil Rights Act of 1964, it is the

practice of HEW to defer the school district's application for "new" program funds only. HEW does not withhold its advancement of funds under "continuing" and previously-approved programs, asserting itself powerless under the statute to do so. Defendants are correct in their interpretation of the statute.

(2) HEW makes no attempt after a final determination of Title VI ineligibility to recapture funds distributed to a district between the notice of hearing and the final determination of Title VI ineligibility, against asserting itself powerless under the statute to do so. The statute makes no provision for the recapture of such funds.

(3) Since administrative enforcement proceedings generally consume one or more years, HEW's limited deferral practice allows the continued flow of large Federal aid to the respondent school district.

(4) After the initiation and during the pendency of administrative enforcement proceedings and until action by HEW terminating or refusing to grant or continue Federal assistance, defendants have no authority to withhold Federal payments to school systems or agencies under continuing and previously-approved programs. Under the statute, said termination action is not to become effective (a) until the agency head makes a report to the appropriate Committees of Congress, and (b) thirty days have elapsed after the filing of said report.

B. *Injunction*

(1) Defendants, their successors, agents and employees, are required and enjoined to provide in verified form the following data to counsel for the plaintiffs as indicated:

Every sixth month after the issuance of this Order, for a period of three years, a listing of each notice of hearing issued to a public educational system or agency under Title VI with date thereof; a listing of each termination action with date thereof; a listing of each report by the head of the agency to the appropriate Committees of Congress containing the basis for said action and date of said report; and the nature and amount of funds paid by defendants after initiation and during pendency of enforcement proceedings until termination actions resulting therefrom become effective as provided by the statute.

██ Plaintiffs are awarded the costs of this action, including the costs of the depositions taken therein. Plaintiffs are entitled to an attorney's fee as part of the costs, pursuant to Public Law 92–318, Section 718 (86 Stat. 369), in an amount to be specified by further Order of this Court after appropriate proceedings.

## APPENDIX A

### Public Higher Education Compliance Efforts

| State | Date of HEW Letter Requesting Desegregation Plan Within 120 Days or Less | Date State Plan Submitted (Latest Submission if Plan Revised) | Date of HEW Comment on State's Latest Submission |
|---|---|---|---|
| Louisiana | January 1969 | None | |
| Mississippi | March 1969 | None | |
| Oklahoma | February 1970 | None | |
| North Carolina | February 1970 | None | |
| Florida | February 1970 | None | |
| Arkansas | January 1969 | October 1969 | None |
| Pennsylvania | March 1969 | November 1969 | None |
| Georgia | February 1970 | May 1970 | None |
| Maryland | March 1969 | December 1970 | None |
| Virginia | December 1969 | December 1970 | None |

## APPENDIX B

School Districts with Substantial Racial Disproportion
Where no HEW "Swann" Letter Sent

Arkansas
Conway County
Blytheville
South Mississippi
Hot Springs
Texarkana

Florida
Madison County
Hamilton County
Martin County

Georgia
Hall County

Kentucky
Louisville
Richmond City
Bowling Green City
Hopkins County
Floyd County

Louisiana
Assumption Parish

Maryland
Baltimore City
Worcester County
St. Mary's County

Mississippi
Greene County
Vicksburg

Missouri
Kansas City
St. Louis
Maplewood-Richmond Heights
University City
Normandy
Webster Groves
Rittenour
New Madrid R–1
Kirkwood R–7
Columbia
Berkeley

North Carolina
Washington County·
Hickory City
Cherokee County
Asheville City
Lumberton City
Hyde County
Johnston County
Cumberland County
Kings Mountain City

Oklahoma
Pryor City
Anadarko
El Reno
Bartlesville

South Carolina
Harry County
Florence County #3
Laurens County #56
Union County
Jasper County
Anderson County #5
Lancaster County

Tennessee
Murfreesboro
Rutherford County

Texas
San Antonio ISD
Seguin ISD
Taylor ISD
Sweetwater ISD
Calhoun ISD
Lamar ISD
Snyder ISD
Plainview ISD
Kingsville ISD
Wilmer-Hutchins ISD
Brownfield ISD
McKinney ISD
Galveston ISD
Brownwood ISD
Levelland ISD
Fort Bend ISD
Northside ISD
Monahans-Wickett-Pyote ISD
Texarkana ISD
Jacksonville ISD
Hardin-Jefferson ISD
Mineral Wells ISD

Virginia
Martinsville City
Westmoreland County
Chesapeake City
Fluvanna County
Nelson County

West Virginia
McDowell County
Hancock County
Cabell County
Kanawha County
Raleigh County

APPENDIX C

School Districts Found by HEW To Be In Presumptive Violation of
Swann Where No Acceptable Desegregation Plan Submitted

Delaware
    Capital
    Indian River
Florida
    Marion
Georgia
    Griffin/Spaulding
Kentucky
    Christian/Hopkinsville
    Fayette
    Jefferson
    Maysville
    Owensboro
Maryland
    Anne Arundel
Mississippi
    De Soto
    Hancock
    Tupelo
    Warren
North Carolina
    Columbus
    Fayetteville
    Kinston City
    Martin
    Montgomery
    Richmond
    Scotland/Laurinburg
    Tarboro

Oklahoma
    Ardmore
    Lawton
South Carolina
    Beaufort
    Sumter #17
    York #3
    Williamsburg
Tennessee
    Clarksville
    Lauderdale
Texas
    Big Spring
    Corsicana
    Goose Creek
    Grand Prarie
    Marshall
    Victoria
Virginia
    Albemarle
    Alexandria
    Danville
    Hampton City
    Henrico
    Franklin