Cordelia KELSEY, infant, by her parent, Louise Kelsey, et al., Plaintiffs,

v.

Caspar W. WEINBERGER, Individually and as Secretary of Health, Education and Welfare, et al., Defendants.

Civ. A. No. 1660–73.

United States District Court, District of Columbia.

Sept. 4, 1973.

Jack Greenberg, James Nabrit, III, Norman Chachkin, New York City, Joseph L. Rauh, Jr., John Silard, Elliott C. Lichtman, Daniel H. Pollitt, Washington, D. C., for plaintiffs.

Harold H. Titus, Jr., U. S. Atty., Arnold T. Aikens, Robert M. Werdig, Jr., Asst. U. S. Attys., Washington, D. C., for defendants.

## OPINION

WILLIAM B. JONES, District Judge.

The plaintiffs in this action seek to declare unlawful and enjoin the operation of the August 16, 1973, regulation of the Department of Health, Education, and Welfare [HEW] implementing the Emergency School Aid Act of 1972 [ESAA], 20 U.S.C. §§ 1601–1619 (Supp. II, 1972). Under that new regulation, 45 C.F.R. § 185.44(d)(3), 38 Fed.Reg. 21646 (1973), the defendant Secretary of HEW has waived the ineligibility of five school districts [1] under 20 U.S.C. § 1605(d)(1)(B)(Supp. II, 1972) [2] to re-

---

1. The school districts encompass Los Angeles, Baltimore, Detroit, Richmond (California), and Rochester (New York).

2. 20 U.S.C. § 1605(d)(1)(B) (Supp. II, 1972) provides:

(d)(1) No educational agency shall be eligible for assistance under this chapter if it has, after June 23, 1972—

(B) had in effect any practice, policy or procedure which results in the disproportionate demotion or dismissal of instructional or other personnel from minority groups in conjunction with desegregation or the implementation of any plan or the conduct of any activity described in this section, or otherwise engaged in discrimination based upon race, color, or national origin in the hiring, promotion, or assign-

ceive funds under ESAA, which is designed to provide financial assistance

to meet the special needs incident to the elimination of minority group segregation and discrimination among students and faculty in elementary and secondary schools.

20 U.S.C. § 1601(b)(1) (Supp. II, 1972).

The plaintiffs are school children in several of the affected cities who through their parents charge the defendants Secretary of HEW and Acting Assistant Secretary of HEW with violating their duties under ESAA. The suit was originally filed seeking a temporary restraining order and preliminary injunction, but at the hearing on the TRO an expedited schedule was agreed to for the filing of cross-motions for summary judgment, which were heard August 31, 1973, eight days after the suit was filed. The factual allegations of the complaint are simple and undisputed, and the Court finds that there is no genuine issue of matter of fact, and thus the case is ripe for disposition by summary judgment.

The plaintiffs allege and the defendants do not seriously dispute that the five school districts in question after June 23, 1972, "engaged in discrimination based upon race . . . in the . . . assignment of employees."[3] 20 U.S.C. § 1605(d)(1)(B) (Supp. II, 1972). Each school district could receive a waiver of its ineligibility, however, upon an application

specify[ing] the reason for its ineligibility, contain[ing] such information and assurances as the Secretary shall require by regulation in order to insure that any practice, policy, or procedure, or other activity resulting in the ineligibility has ceased to exist or occur and includ[ing] such provisions

as are necessary to insure that such activities do not reoccur after the submission of the application.

20 U.S.C. § 1605(d)(1) (Supp. II, 1972). The Secretary is allowed to grant waivers only

upon determination that any practice, policy, procedure or other activity resulting in ineligibility has ceased to exist, and that the applicant has given satisfactory assurance that the activities prohibited in [section 1605(d) (1)] will not reoccur.

20 U.S.C. § 1605(d)(3) (Supp. II, 1972).

On February 6, 1973, the Secretary issued regulations, including those pursuant to these sections. 45 C.F.R. Part 185, 38 Fed.Reg. 3450–71 (1973). Under those regulations, practices, policies, and procedures making an educational agency ineligible for assistance included

the assignment of full-time classroom teachers to the schools of such agency in such a manner as to identify any of such schools as intended for students of a particular race, color, or national origin.

45 C.F.R. § 185.43(b)(2), 38 Fed.Reg. 3642 (1973).

That ineligibility could be waived, however, if the agency had

assigned its full-time classroom teachers to its schools so that no school is identified as intended for students of a particular race, color, or natural origin. . . . In the case of local educational agencies not implementing such a plan [of desegregation], or implementing such a plan which contains no provision as to assignment of faculty, such assignments shall be made so that the proportion of minority group full-time classroom teachers at each school is between 75 per centum

---

ment of employees of the agency (or other personnel for whom the agency has any administrative responsibility):

.    .    .    .    .

3. Although the defendants in their motion papers argue that the mere racial identifia-

bility of the faculties in the five school districts does not prove discrimination within the meaning of 20 U.S.C. § 1605(d)(1)(B), the undenied fact remains, *infra*, that all the districts were originally denied funds under ESAA because of discrimination in the assignment of personnel.

and 125 per centum of the proportion of such minority group teachers which exists on the faculty as a whole, and so that the variations in such proportions which remain on various faculties do not correspond to such variations in the student populations of such schools.

45 C.F.R. § 185.44(d)(3), 38 Fed.Reg. 3463 (1973).

Thus under the February 6, 1973 regulation an educational agency could not receive a waiver of ineligibility under the ESAA unless it had eliminated both the practice, policy, or procedure of racially discriminatory assignment of personnel and *the results of the practice, policy, or procedure.* After the passage of ESAA on June 23, 1972, HEW approved the applications of some 900 cities, including many which had to transfer as many as 750 teachers in order to comply with ESAA and the promulgated regulations. The applications of the five districts in question here were disapproved because racially identifiable schools still existed within the meaning of the regulations.

On August 9, 1973, the Secretary issued a new 45 C.F.R. § 185.44(d)(3), 38 Fed.Reg. 21646 (1973), effective August 16, 1973:

(3) In the case of ineligibility resulting from discriminatory assignment of teachers as prohibited by § 185.43(b)(2), such applications for waiver shall contain evidence that such agency has adopted and implemented a nondiscriminatory assignment policy. In the case of a local educational agency implementing a plan . . . [of desegregation], such evidence shall indicate that such agency is complying with the requirements of such plan with respect to the assignment of faculty. In the case of local educational agencies not implementing such a plan, or implementing such a plan which contains no provision as to assignment of faculty, such evidence shall include at a minimum: .

(i) Adoption by such agency of a policy of nondiscriminatory assignment of faculty and staff members;

(ii) Determination of all faculty and staff assignments made after the date of application for waiver in a manner which does not contribute to or reinforce the racial or ethnic identifiability of any school operated by such agency;

(iii) Adoption of a plan to eliminate all full-time teaching facilities composed exclusively of members of a single racial or ethnic group no later than the end of the period for which assistance is to be awarded; and

(iv) Adoption of a plan for assignment of faculty and staff members which will eliminate all racially or ethnically identifiable faculties at schools operated by such agency within a reasonable period of time but in no event later than the commencement of the 1975–76 academic year. In the case of school districts in which the percentage of minority group members on the full-time teaching faculty is less than the percentage of minority group members in the student body, such plans shall include a plan of affirmative action to increase the percentage of minority group members on the full-time teaching faculty of such agency.

Under the new regulation, the elimination of the practice, policy, or procedure that resulted in the racially discriminating assignment of personnel and the adoption of a nondiscriminatory personnel assignment policy and the adoption of a plan to eliminate the results of the past discriminatory policy within two years are sufficient conditions to warrant the grant of a waiver of ineligibility. The five school districts in question reapplied for waivers which were granted by the Secretary under the terms and conditions of the revised regulation. Pursuant to 20 U.S.C. § 1605(e) (Supp. II, 1972), the waivers were transmitted to the Senate Commit-

tee on Labor and Public Welfare and the House Committee on Education and Labor. Those waivers cannot then be approved for actual payment until 15 days after receipt of the notice of waiver by the Committees.

■ The plaintiffs argue that the new regulation does not lawfully implement the statute because the elimination of only the practice, policy, or procedure which resulted in the discriminatory assignment of personnel but not the results of that past policy before a waiver of ineligibility is granted does not insure that the "activity resulting in the ineligibility has ceased to exist or occur. . . . " 20 U.S.C. § 1605(d)(1). The defendants, on the other hand, argue that once the practice, policy, or procedure itself has been changed, the past effects can be eliminated over a reasonable period of time, thus allowing a present waiver of ineligibility. No other cases interpreting the waiver sections have been cited to or found by the Court. The language of the waiver section is equally susceptible of either interpretation. Although not relied upon by either party, the Court has unsuccessfully attempted to find significant help in the legislative history. Upon reviewing ESAA as a whole, however, the Court finds that it must interpret the waiver sections in the manner urged by the defendants.

Section 702 of ESAA, 20 U.S.C. § 1601 (Supp. II, 1972), sets forth the congressional findings and purpose behind the Act:

(a) The Congress finds that the process of eliminating or preventing minority group isolation and improving the quality of education for all children often involves the expenditure of additional funds to which local educational agencies do not have access.

(b) The purpose of this chapter is to provide financial assistance—

(1) to meet the special needs incident to the elimination of minority group segregation and discrimination among students and faculty in elementary and secondary schools;

(2) to encourage the voluntary elimination, reduction, or prevention of minority group isolation in elementary and secondary schools with substantial proportions of minority group students; and

(3) to aid school children in overcoming the educational disadvantages of minority group isolation.

From the above language it is clear that the Congress recognized that many local school districts could not accomplish the task of desegregation without federal financial assistance. The basic eligibility requirements for that aid are found in 20 U.S.C. § 1605(a)(1)(A) & (B). Funds are made available to local educational agencies which are either implementing a Court ordered or HEW approved plan of desegregation or have or will implement a voluntary plan of desegregation.[4] Agencies which would otherwise be eligible for funds are made ineligible if they have engaged in the conduct proscribed in 20 U.S.C. § 1605(d)(1).

■ Thus the clear intent of the statute is that federal funds be available to meet the needs incident to the process of desegregation. That language implies that funds will be expended to carry out an ongoing implementation of a desegregation program.

In the instant case, the school districts have ended their past practice, policy, or procedure which resulted in the racially discriminatory assignment of personnel. The results or effects of those practices are still present, although the districts have promised to eliminate even the results by the start of the 1975–76 school year. But the statute does not require that the results be

---

4. There are other ways in which a local educational agency can make itself eligible for assistance, but these are unimportant for the present discussion.

eliminated before a waiver of ineligibility may be granted. Only the elimination of the practice is required.

This interpretation is reinforced by viewing potential waivers under the other ineligibility sections of the Act, which are all subject to the same waiver standard. Under 20 U.S.C. § 1605(d)(1)(D), a practice, policy, or procedure of a school district which after June 23, 1972, resulted in, for example limiting curricular activities to avoid participation by minority group children, would make the district ineligible for assistance. It takes no great feat of the imagination to hypothesize many examples in which the elimination of the result of such a practice, policy, or procedure would require the expenditure of large sums of money. To require that the result as well as the practice be eliminated before a waiver could be granted would be anomalous indeed in the face of the congressional finding that local school districts lack the funds to implement plans of desegregation.

At the oral hearing on August 31, 1973, much was made of the inadequacy of the plans of the five school districts to eliminate the tangible results of their past practices by the 1975–76 school year. In that case the proper challenge is to the adequacy of the plans and not to the regulation under which they were submitted.

The plaintiffs have also challenged the constitutionality of the new regulation under the fifth amendment to the United States Constitution because it permits federal funds to go to school districts which presently have admittedly racially assigned faculties. The argument is undoubtedly of great force. But if the new regulation is unconstitutional, so is the statute, because this Court has found that the new regulation was issued in consonance with its terms. In that case, the issue of constitutionality can only be decided by a statutory three-judge court. 28 U.S.C. §§ 2282, 2284 (1970).

The Court has struggled with an unclear act in reaching this result. A solid definition of policy, practice, or procedure would have eliminated or at least reduced the problem. Moreover, the result reached is in no small degree quite unpalatable, especially in view of past HEW failures in the field of desegregation. *See* Adams v. Richardson, 351 F. Supp. 636 (D.D.C.1972), injunction entered, 356 F.Supp. 92 (D.D.C.1973), aff'd en banc, 480 F.2d 1159 (D.C.Cir. 1973). But the result is required if the purpose of ESAA is to be effected.

An appropriate Order has been entered, including the grant of an injunction pending appeal under Fed.R.Civ.P. 62(c) to expire at 5 P.M., September 7, 1973.