602 F.2d 87
 Patricia Ann ROBINSON and Bettie Joe Robinson, Minors, by
their Father and Next Friend, James Robinson, et
al., Plaintiffs,
v.
Frank VOLLERT, as Superintendent of the Galveston
Independent School District, Galveston, Texas, et
al., Defendants-Third Party Plaintiffs-Appellees,
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education and
Welfare, et al., Third Party Defendants-Appellants.
 No. 76-2804.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 10, 1979.
 
 James R. Gough, Asst. U. S. Atty., Houston, Tex., Dennis J. Dimsey, Atty., Appellate Section, Walter W. Barnett, U. S. Dept. of Justice, Washington, D. C., for Joseph Califano et al.
 Ed Schwab, III, Bryan F. Williams, Jr., Galveston, Tex., for Frank Vollert et al.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 This case involves the construction of a consent order entered into by the Department of Health, Education and Welfare and the Galveston (Texas) Independent School District (GISD), and the validity of HEW's decision to deny GISD's application for federal aid under the Emergency School Aid Act, (ESAA) 20 U.S.C. §§ 1601 Et seq.[1] Because we disagree with the district court's construction of the consent order, we reverse.
 
 
 2
 In May 1975, HEW initiated administrative proceedings for the purpose of terminating all federal assistance to GISD, pursuant to Title VI of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000d Et seq. Title VI prohibits discrimination on account of race, color, or national origin in all programs and activities receiving federal financial assistance, See 42 U.S.C. § 2000d, and vests enforcement power in the agencies disbursing federal funds, See 42 U.S.C. § 2000d-1. HEW's action was initiated because GISD had previously operated a school system that was segregated by law and there remained four elementary schools within the district that were 95% Or more black, even though blacks made up only 65% Of all pupils attending GISD schools in 1975.[2]
 
 
 3
 Title VI, however, provides that educational funds may not be withheld from a school district for noncompliance with Title VI nondiscrimination requirements if the school district is in compliance "with a final order or judgment of a Federal court for the desegregation of the school or school system." 42 U.S.C. § 2000d-5. In 1961 a federal district court ordered GISD to implement a "stairstep" freedom of choice desegregation plan. Under this order GISD was required to put into effect a freedom of choice plan for the first grade in 1961, with an additional grade added to the plan each subsequent year. According to this plan, the entire system would be operating under freedom of choice in September 1973. The record in this case does not spell out in detail what method of desegregation GISD adopted, but it does show that at least by 1969 freedom of choice had been replaced by a neighborhood school assignment program and that GISD in fact achieved a greater degree of desegregation than required by the 1961 order and did so more rapidly than required by the 1961 order. Yet even though GISD by 1975 was not operating its schools pursuant to the freedom of choice plan contained in the 1961 order, GISD contended that because it was in compliance with the 1961 order HEW was therefore barred by the § 2000d-5 proviso from contending that it was in violation of Title VI.
 
 
 4
 GISD brought suit in the federal district court that had issued the 1961 order seeking a declaratory judgment that HEW's action was barred by § 2000d-5 and to enjoin HEW's Title VI proceedings against it. This suit was settled before judgment and a consent order was signed by the parties and approved by the district court. This consent order, dated June 16, 1975, provided in part that HEW would not proceed with the administrative Title VI proceedings it had begun against GISD and that HEW would not
 
 
 5
 proceed with or attempt to conclude . . . any other administrative enforcement pursuant to 45 C.F.R., Parts 80 and 81, for the purpose of withholding from or depriving said School District of any Federal financial assistance or funds under their control or administration for the reason that such School District is or has failed to desegregate its school system, or any school or schools comprising a part of such system in violation of regulations promulgated under Title VI of the Civil Rights Act of 1964 pending further order of the Court.
 
 
 6
 Paragraph 2 of the consent order further provided:
 
 
 7
 The third party defendants will allow filing of, and consider, evaluate, process, and act upon, any request or application by defendant Galveston Independent School District for Federal financial assistance or funds under their control, supervision, or administration, with which it has sought or may seek to fund or defray the cost of any educational program to which it would be entitled. HEW funding shall not be deferred pursuant to 45 C.F.R. § 80.8(b) inasmuch as HEW has agreed not to proceed with administrative proceedings as outlined in paragraph 1, pending further order of the Court.
 
 
 8
 On May 5, 1975, while negotiations concerning settlement of the Title VI dispute between GISD and HEW were proceeding, HEW received GISD's application for federal funds under the Emergency School Aid Act, 20 U.S.C. §§ 1601 Et seq., for the 1975-76 school year. GISD proposed to use these funds to partially fund the operation of a guidance and counselling center.
 
 
 9
 The Emergency School Aid Act of 1972 was enacted in order to provide additional funding for schools that are in the process of eliminating minority group segregation. 20 U.S.C. § 1601. A school district is eligible for ESAA funds only if it "is implementing" (a) a court-ordered desegregation plan or (b) a plan that has been approved by the Secretary of HEW as adequate under Title VI or (c) a voluntarily-adopted plan to eliminate, reduce, or prevent minority group isolation in its schools, or to establish one or more "integrated schools," as restrictively defined in the Act. 20 U.S.C. § 1605(a)(1). The Act also provides that a plan involving freedom of choice will not satisfy ESAA eligibility requirements unless the HEW Assistant Secretary for Education finds that the plan has achieved or will achieve the complete elimination of a dual school system in the district. 20 U.S.C. § 1609(a)(7). Several other specified discriminatory acts, such as transferring school property to discriminatory private schools or the operation of segregated classes within an integrated school, will disqualify an otherwise qualified school system from receiving ESAA funds. 20 U.S.C. § 1605(d)(1).
 
 
 10
 The immediate parties to the settlement negotiations between HEW and GISD discussed whether the proposed consent order would have any application to ESAA grants, and HEW officials stated that the consent order would apply only to Title VI procedures and not to grants under ESAA. However, on June 6, 1975, HEW Regional Program Officer Joe Smith orally advised GISD that its 1975-76 ESAA application had been approved. Though GISD never received formal written notice of approval, the district court found that GISD relied on Smith's oral representation in entering into the consent order.
 
 
 11
 On the day the consent order was signed by the parties, GISD received a mailgram from Dr. Goldberg, HEW Associate Commissioner for Equal Educational Opportunity, informing GISD that its application for 1975-76 ESAA funds would be denied because it had committed a disqualifying act under 20 U.S.C. § 1605(d)(1)(D). This subsection prohibits any school district from receiving ESAA funds if it has
 
 
 12
 had in effect any other practice, policy, or procedure, such as limiting curricular or extracurricular activities (or participation therein by children) in order to avoid the participation of minority group children in such activities, which discriminates among children on the basis of race, color, or national origin . . . .
 
 
 13
 HEW informed GISD that its operation of four elementary schools with disproportionately high concentrations of black students was a practice that violates this subsection.
 
 
 14
 HEW subsequently sent another mailgram to GISD, on June 25, stating another statutory ground for denial of ESAA funds GISD's desegregation plan did not meet the threshold eligibility requirements of § 1605(a)(1) in that it was not currently operating under a plan approved by HEW as meeting the requirements of Title VI and that the 1961 court-ordered plan was not acceptable under ESAA because it involved freedom of choice and there had not been a determination by HEW that it would achieve the complete elimination of the previous dual school system.[3]
 
 
 15
 GISD then went back to federal district court, alleging that HEW's denial of ESAA funds violated the June 16 consent order. The district court agreed and ordered HEW either to disburse the ESAA funds or demonstrate that it did not have sufficient funds available. The district court rejected HEW's argument that the maintenance of racially concentrated schools was a disqualifying act under § 1605(d)(1)(D) and held that HEW by signing the consent order implicitly agreed that it would not deny GISD any funds, including ESAA funds, "solely on the ground that the District was ineligible to receive assistance because of the status of its desegregation efforts." The court reasoned that HEW was thereby barred from denying, under § 1609(a)(7), that the 1961 court-ordered freedom of choice plan would achieve the complete elimination of the dual school system previously operated by GISD. The district court thus held that GISD was qualified to receive ESAA funds and, since HEW had otherwise approved GISD's proposal as worthy of funding, ordered HEW to disburse the funds or show that sufficient funds were not available to it.[4] This appeal followed. We reverse.
 
 
 16
 The district court held that GISD was qualified under § 1605(a)(1)(A)(i), which covers desegregation plans "undertaken pursuant to a final order issued by a Court of the United States," because GISD had never violated the 1961 freedom of choice order and HEW could not, consistently with the consent order, find that the freedom of choice plan would not eliminate the dual school system.[5] The district court should not have reached this issue. Section 1605(a) (1)(A)(i) allows a school district to rely on a court-ordered plan only if it "is implementing" such a plan. The record is undisputed that in 1975 GISD was not operating its schools under the 1961 freedom of choice desegregation plan but was instead implementing a voluntarily-adopted neighborhood school assignment desegregation plan. If GISD had been operating its schools pursuant to the 1961 plan at the time of this suit, then the district court could properly have considered whether HEW was barred from denying that the plan was adequate. Whether the 1961 freedom of choice plan, if implemented, would have been successful in eliminating the dual school system is a purely hypothetical question that is not at all relevant to whether GISD should receive ESAA funds to aid it in implementing its neighborhood assignment desegregation plan.[6]
 
 
 17
 The other alternative ground on which GISD might qualify for ESAA funds[7] is § 1605(a)(1)(A)(ii), that it "is implementing a plan . . . which has been approved by the Secretary as adequate under Title VI of the Civil Rights Act of 1964 for the desegregation of minority group segregated children or faculty in such schools . . . ." Because the district court found GISD qualified under subsection (A)(i), it did not reach the question whether the consent order barred HEW from denying that GISD qualified under subsection (A)(ii). However, the court concluded that the consent order barred HEW from denying any funds to GISD on the sole ground of the inadequacy of its desegregation efforts, and this conclusion is squarely applicable to subsection (A)(ii). Thus, if the district court correctly construed the consent order, HEW is required to approve GISD's desegregation plan as meeting the requirements of Title VI and must treat GISD as qualified for ESAA funding.
 
 
 18
 As we interpret the consent order,[8] however, it will not bear the construction placed on it by the district court. Consent orders are interpreted as contracts and are to be construed only by reference to the "four corners" of the order itself. Reference to extrinsic evidence, such as the circumstances of formation, is permissible only if the order is ambiguous in some respect. See U. S. v. ITT Continental Baking Co., 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); U. S. v. Armour & Co., 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971).
 
 
 19
 The district court was aware of the rule that a consent order is not to be construed by reference to the purposes of the parties because parties to a consent decree generally have opposing purposes, See U. S. v. Armour & Co., 402 U.S. at 681-82, 91 S.Ct. 1752, 29 L.Ed.2d at 263, but held that this principle had no application here because the consent order itself contained a statement of the parties' purpose. The district court read the first paragraph as stating expressly that its purpose was "to preclude HEW from 'withholding or depriving said School District of any Federal financial assistance or funds under their control or administration for the reason that such School District is or has failed to desegregate its school system . . . .' " The district court took this "purpose" of the consent order into account in construing the document. This was error. On reading the language identified by the district court as expressing the purpose of the parties in context, it is clear that it is not expressing a purpose of the parties but is instead only defining precisely what actions HEW had agreed to refrain from Title VI enforcement actions pursuant to HEW Title VI enabling regulations contained in 45 C.F.R., Parts 80 and 81. At no point in the order do the parties state any general purpose.
 
 
 20
 Thus we first look to the four corners of the consent order to see if it can even arguably support the construction placed on it by the district court. The document is carefully and precisely drafted and cannot fairly be read to prohibit HEW from denying ESAA funds to GISD. Paragraph 1 of the order explicitly refers solely to proceedings to cut off funds under 45 C.F.R., Parts 80 and 81, the enabling regulations for Title VI. ESAA applications are governed by entirely different administrative proceedings, set forth in 45 C.F.R., Part 185 and are thus not affected by paragraph 1 of the consent order. Paragraph 2 of the order clearly does not require HEW Approval of any GISD applications for funds. It only states that HEW will lift the general prohibition against receipt of funds that accompanies Title VI enforcement proceedings. The order states that HEW will "allow filing of, and consider, evaluate, process, and act upon" GISD applications for funds. It is certainly at least implicit in this language that HEW may deny future applications from GISD.
 
 
 21
 The impetus behind the district court's contrary reading seems to be its view that HEW accomplished under ESAA what it consented not to do under Title VI. This reading, however, attributes to HEW a greater concession than it agreed to make. HEW agreed only not to continue with administrative proceedings that would establish for purposes of All HEW funding projects that GISD was in violation of Title VI nondiscrimination requirements. HEW did not agree that when ruling on applications for funds that require an Affirmative HEW finding that the applicant is in compliance with Title VI (such as ESAA), it would make such an affirmative finding. In other words, HEW agreed that it would not make a general finding that GISD was in violation of Title VI; it did not agree that it would always make affirmative findings that GISD was in compliance with Title VI. HEW was not taking away with one hand everything it had given with the other for not all HEW educational funding programs contained a requirement that the recipient be affirmatively found to be in compliance with Title VI.
 
 
 22
 Perhaps the agreement as we construe it shows HEW to be a hard bargainer; it is clear, however, that the order embodied the understanding of the parties. However, even assuming, Arguendo, that the consent order is on its face sufficiently ambiguous to require reference to the extrinsic facts of the circumstances surrounding the negotiation of the terms of the consent order, our conclusion remains the same. During negotiations, as the district court found, the HEW representatives conducting the negotiations warned GISD that the consent order as drafted would cover only Title VI cut-off procedures and not ESAA grants.
 
 
 23
 The district court found that Regional HEW Program Director Smith, apparently unaware of the negotiations, orally notified GISD that its 1975-76 ESAA application had been approved and would be funded. The Regional Program Director in fact did not have authority to approve ESAA grants, only to recommend approval by HEW. GISD strongly argues on appeal that it relied on Smith's representation in entering into the consent order and the district court made a finding of fact that GISD did rely on the representation. Although it is not clear that the district court made use of its finding of GISD reliance in reaching its conclusions of law, GISD's reliance cannot, in any event, prevent HEW from enforcing the eligibility requirements of ESAA. Reliance on the misrepresentation might be grounds for rescission of the consent order, if the representation was made in bad faith or, if innocently made, GISD justifiably relied on the representation. Smith's unauthorized misrepresentation cannot bar HEW from declining to give funds to applicants who are not qualified by statute, however, because the government is not bound by unauthorized representations. See U. S. v. Florida, 482 F.2d 205, 209 (CA5, 1973). As the Second Circuit recently stated,
 
 
 24
 The government could scarcely function if it were bound by its employees' unauthorized representations. Where a party claims entitlement to benefits under federal statutes and lawfully promulgated regulations, that party must satisfy the requirements imposed by Congress. Even detrimental reliance on misinformation obtained from a seemingly authorized government agent will not excuse a failure to qualify for the benefits under the relevant statutes and regulations.
 
 
 25
 Goldberg v. Weinberger, 546 F.2d 477, 481 (CA2, 1976), Cert. denied, 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977) (footnote omitted).
 
 
 26
 GISD also argues that HEW's denial of ESAA funds was an abuse of discretion because, as the district court found, its action was not based on a careful analysis of the facts. The only facts relevant to HEW's decision, however, were that schools that were substantially racially unbalanced continued to exist in GISD and that GISD had in the past operated a De jure dual school system. It had been ordered by the district court in Adams v. Richardson, supra, to consider these facts as presumptive violations of Title VI. We cannot say HEW's compliance with this court order was an abuse of discretion. Furthermore, GISD did not challenge below the validity of the legal theory that a Title VI violation is shown by past De jure segregation of schools coupled with continued operation of disproportionately racially concentrated schools.
 
 
 27
 All concerned agree that the project to be funded is a worthy one. But apart from the legal issues that we have decided, it is not for us to agree or disagree with HEW's administrative actions. We do not exercise generel supervision over the behavior of administrative agencies. The district court erred in concluding that the consent order required HEW to approve GISD's 1975-76 ESAA application, and its decision must be reversed.
 
 
 28
 REVERSED.
 
 
 
 [1]
 The 1972 Act was repealed in 1978, Pub.L.No.95-561, Title VI, § 601(b)(2), 92 Stat. 2268, effective Sept. 30, 1979. However, it was substantially reenacted as the Emergency School Aid Act of 1978, Pub.L.No. 95-561, Title VI, § 601(a), 92 Stat. 2252, Codified at 20 U.S.C.A. §§ 3191-3207 (1979 app.). We need not address any changes made by the 1978 Act and we will cite to the now-repealed U.S.Code sections
 
 
 [2]
 In starting administrative proceedings under Title VI to cut off federal assistance to GISD, HEW was complying with the order of a federal district court in the District of Columbia. In Adams v. Richardson, 356 F.Supp. 92 (D.D.C.), Aff'd as modified, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973), the district court, relying on Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), held that school districts that previously operated De jure segregated schools were presumptively in violation of the equal protection clause and Title VI if schools within the district remained substantially disproportionate in their racial composition. The court ordered HEW to begin negotiations with such school districts that were not then operating under a court desegregation order for the purpose of bringing these school districts into voluntary compliance with Title VI. 356 F.Supp. at 96-97. The district court placed GISD in this category of school districts. Id. at 101. After voluntary negotiations failed to produce results, the D.C. district court ordered HEW to begin administrative Title VI proceedings to cut off federal assistance to GISD. Adams v. Weinberger, 391 F.Supp. 269, 271, 276 (D.D.C.1975)
 
 
 [3]
 Neither this mailgram nor the briefs and record before us mention the third possible route to eligibility under ESAA a voluntarily adopted plan that will reduce or eliminate minority isolation. The requirements for such a qualifying plan appear stringent and perhaps GISD could not meet them. In any event, GISD does not here assert that its plan can qualify as an adequate voluntary plan
 
 
 [4]
 As an alternative ground of decision the district court held that HEW was estopped from denying ESAA funds to GISD by a statement in a June 20 letter to GISD from Peter Holmes, Director of HEW's Office for Civil Rights, confirming the termination of Title VI proceedings against GISD. The sentence in question reads, "The Galveston Independent School District is now eligible to apply for and receive all classes of federal financial assistance For which it would otherwise be entitled effective as of June 16, 1975." (Emphasis added.) The emphasized portion of this sentence (which was omitted by the district court in its discussion of this issue) makes it clear that HEW was not promising to fund any and all future aid applications by GISD
 
 
 [5]
 The district court also held that HEW was barred by the doctrine of separation of powers from denying that a federal court-approved freedom of choice plan would eliminate a dual school system. Because, as discussed below, GISD was not operating under a court-ordered plan in 1975, HEW's review of this plan does not even arguably raise separation of powers problems
 
 
 [6]
 GISD argues that this reasoning in effect punishes it for going beyond the court-ordered freedom of choice plan and voluntarily implementing a more effective desegregation plan. GISD misconstrues the purpose of ESAA. The purpose of ESAA is not to reward school districts that have made efforts to desegregate but instead to help schools that are in the process of implementing, voluntarily or involuntarily, qualified desegregation plans
 
 
 [7]
 See note 3 Supra
 
 
 [8]
 Where a district court bases its findings solely on written evidence, our review is not constrained by the clearly erroneous standard. See Nash v. Estelle, 597 F.2d 513, 518 (CA5, 1979) (en banc)