**Colleene PAVEY, Robin C. Greene and Mary K. Owen, Plaintiffs,**

**and**

**United States of America, Plaintiff Intervenor,**

**v.**

**The UNIVERSITY OF ALASKA et al., Defendants and Third Party Plaintiffs,**

**v.**

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, and the Association for Intercollegiate Athletics for Women, Third Party Defendants.**

Civ. No. A79–19.

United States District Court, District of Alaska.

June 9, 1980.

Nancy R. Gordon, Anchorage, Alaska, for plaintiffs.

Alexander O. Bryner, U. S. Atty., Anchorage, Alaska, Kaydell O. Wright, Dept. of Justice, Atty. Gen., Litigation Section, Washington, D. C., for plaintiff intervenor U. S. A.

Floyd V. Smith, Anchorage, Alaska, for University of Alaska.

Theodore E. Fleischer, Anchorage, Alaska, Wm. D. Kramer, Washington, D. C., for N.C.A.A.

Joan Katz, Anchorage, Alaska, and Margaret Polivy, Katrina Renouf, Ellen Sudow, Washington, D. C., for AIAW.

## MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

THIS CAUSE comes before the court on the motions to dismiss filed by the third-party defendants (hereinafter "associations"), the National Collegiate Athletic Association (hereinafter "NCAA") and the Association for Intercollegiate Athletics for Women (hereinafter "AIAW").

By Order of February 8, 1980, this court permitted defendant and third-party plaintiff University of Alaska (hereinafter "University") to bring a third-party complaint against the associations. The underlying complaint alleges that the University is discriminating against female students in its athletic program in violation of Section 901 of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and the due process and equal protection clauses of the Fourteenth Amendment. The University's third-party complaint alleges that if the relief sought by plaintiffs in the underlying complaint is granted, the effect would be to require the University to violate the rules of the intercollegiate athletic associations of which it is a member. Any such violation of the rules, which could result in the denial to the University's students of the opportunity to participate in intercollegiate athletics, would result from the conflicting requirements imposed by federal law and the associations' rules.

Without considering in detail the differences between the rules of the NCAA and the AIAW, a fair reading suggests that in order to comply with their inconsistent mandates, while at the same time abiding by the requirements of federal law, the University would be forced to reduce various spending ceilings and opportunities for its male athletes. Such a reading does not lead to the conclusion that the rules of the AIAW are unduly restrictive; rather it points to the untenable position in which the University is placed as a result of the inconsistency between the rules of the two associations.

The University, therefore, seeks a declaratory judgment holding that the combined effect of those rules is to require and promote discrimination by the University in contravention of its duty to comply with the requirements of federal law. The University further seeks to enjoin the associations from enforcing the rules and expelling, disciplining, or sanctioning the University for failure to abide by them.

The associations' motions to dismiss basically raise two questions:

—Can the University be permitted to maintain this action consistent with constitutional and prudential limitations on a federal court's exercise of judicial power?

—Is Fed.R.Civ.P. 14 impleader proper under the circumstances of this case?

## I

The associations' contentions, while presenting a complex web of constitutional and prudential issues, may nonetheless be stated as discrete propositions:

1. The University does not possess any "relevant protected right" which can be "deprived" under 42 U.S.C. § 1983.

2. Any injury to any such putative right is purely speculative.

3. There is no "case or controversy" between the University and the associations.

4. Any relief sought exceeds the remedial powers of the federal courts.

To synthesize these arguments still further, the associations in essence contend that the University lacks standing and has

further failed to present a ripe, justiciable case or controversy. This court rejects each of these contentions.

### A

The University's primary claim lies under 42 U.S.C. § 1983. Under the test set forth in *Williams v. Gorton*, 529 F.2d 668 (9th Cir. 1976), the University must establish that:

(1) the conduct complained of was engaged in under color of state law, and

(2) the conduct subjected the plaintiff to the deprivation of rights, privileges, and immunities secured by the Constitution of the United States.

529 F.2d 668, 670.

The Ninth Circuit Court of Appeals has held that the actions of the NCAA constitute "state action." *Associated Students v. NCAA*, 493 F.2d 1251 (9th Cir. 1974). For the purpose of its motion, the AIAW has conceded that its actions similarly constitute "state action." AIAW Motion to Dismiss, p. 5, n. 2. The first of the two elements essential to maintaining a § 1983 action is thus easily found.

■ The University has a duty to perform its obligations under federal law. Any sanctions that would be imposed by the associations as an outgrowth of the compliance of the University with such a duty would constitute a deprivation of the University's "right to be free from interference with the performance of that duty." *Regents of University of Minnesota v. NCAA*, 560 F.2d 352, 363 (8th Cir. 1977), *Brewer v. Hoxie School District No. 46*, 238 F.2d 91, 98–101 (8th Cir. 1956). The existence of such a right permits the University to meet the second prong of the *Williams* test, thereby stating a valid § 1983 claim. Furthermore, the potential deprivation of that right supplies the injury essential to a correlative finding of standing. *Regents*, 560 F.2d 352, 363–64.

### B

The associations maintain that no such injury has in fact occurred, and that any sanctions that the associations may apply to the University at a future date are "speculative." This court cannot agree with the implication of the associations' argument: that the University (and its athletes, ultimately) must be put to the test and forced to comply with federal law, thereby violating the associations' rules and running the risk of depriving University students of their right to engage in intercollegiate athletics.

While the University has not established that such sanctions are inevitable, neither has any suggestion been offered by the associations as to why the rules will not be enforced as written. Indeed, the argument of the NCAA that such injury is "speculative" flies in the face of its posture in the pending case of *NCAA v. Califano*, 622 F.2d 1382 (10th Cir. 1980). In arguing that it had standing to challenge the validity of regulations promulgated under Title IX, the NCAA there argued that:

> inasmuch as its members follow NCAA rules for men's intercollegiate sports and AIAW rules for women's intercollegiate sports, and the NCAA and the AIAW rules differ, *the members must react by dropping out of the NCAA or by compelling the NCAA to change its rules at its own costs.*

pp. 7–8 (emphasis supplied).

Surely the NCAA cannot now label the likelihood of its imposing sanctions as "speculative" when the association has earlier conceded that its members must choose between "dropping out" of the association or "compelling" the association to change its rules.

While the University has not in fact been sanctioned by either association, the present situation is closely akin to that before the United States Supreme Court in *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). In that case, physicians consulted by pregnant women were permitted to assert the rights of those women in challenging Georgia's abortion laws. While the physicians had neither been prosecuted nor even threatened with prosecution, the court nonetheless held that the physicians had:

assert[ed] a sufficiently direct threat of personal detriment. They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.

410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201. *See Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

■ The University reasonably seeks to avoid a confrontation with the associations' rules and any resulting disruption in its students' participation in intercollegiate athletics. The Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.,* the means through which the University is seeking to accomplish this goal, is aimed at eliminating the situation where a party is discouraged from violating a statute in order to test its validity because of the possibility that such a violation may result in a severe sanction. Here, the University is threatened with the severe sanction of having its athletes excluded from participation in intercollegiate athletics.

The University is in an even more compelling situation than the more typical plaintiff seeking relief under the Declaratory Judgments Act. Unlike such a plaintiff, who seeks to make a voluntary choice to follow a particular course of action, the University faces the near certainty that if the underlying action is successful, it will have no choice but to violate the rules of one or both of the associations and expose itself to sanctions. To force the University nonetheless to follow such a course would be tantamount to a requirement that it incur "social and economic waste and destruction in order to obtain a determination of [its] rights." S.Rep. No. 1005, 73d Cong., 2d Sess. 2–3 (1934), in support of the Declaratory Judgments Act.

## C

■ The associations next contend that the undisputed facial neutrality of their respective rules negates the University's claim that those rules force the University to discriminate in its own athletic program. This attempt to shrug off the clear inconsistency between the NCAA's and the AIAW's rules cannot be accepted. It ignores the gravamen of the University's complaint: that it is the combined *effect* of those rules which forces the University to discriminate. *See De La Cruz v. Tormey,* 582 F.2d 45 (9th Cir. 1978).

If the underlying action against the University is successful, the University could then be forced to break the rules of the AIAW or lower the quality of its opportunities for its male athletes. Such a "choice" is obviously no choice at all; rather it demonstrates the transparency of the associations' arguments.

Had a single athletic association enacted the exact same rules as the NCAA and the AIAW collectively have enacted, a claim of discriminatory state action could certainly have been alleged by the University. The situation is no different when two athletic associations, each of whose actions constitutes state action (supra), enact separate sets of rules which together have precisely the same discriminatory effect.

## II

■ The associations' suggestion that impleader is inappropriate under the facts of this case would require this court to adopt an overly technical view of Fed.R.Civ.P. 14. That rule is primarily designed " 'to reduce litigation by having one lawsuit do the work of two.' " *U. S. v. Grasso and Son, Inc.,* 380 F.2d 749, 751 (5th Cir. 1967). While the language of Fed.R.Civ.P. 14 more neatly describes the traditional indemnity action, this court finds neither reason nor precedent to so restrict its application.

First, the analysis in Part I reveals that it is appropriate to resolve in a single lawsuit the allegedly irreconcilable mandates of federal law and the rules of the associations. Any other approach would result in an inefficient use of judicial resources and would risk subjecting the University and its students to an undesirable disruption of the University's intercollegiate athletic program.

Second, federal courts have shown commendable flexibility in adapting the underlying rationale of the impleader mechanism to the demands of multi-party constitutional and civil rights litigation. See *Kelley v. Metropolitan County Board of Education*, 372 F.Supp. 540 (M.D.Tenn.1973); *Robinson v. Vollert*, 411 F.Supp. 461 (S.D.Tex.1976), reversed on other grounds, 602 F.2d 87 (5th Cir. 1979).

The associations repeatedly attempt to characterize the University's claim as "independent" of the underlying complaint against the University. Such a characterization misconstrues the relationships between the parties. The University's complaint alleges that any violation of federal law for which it might be adjudged liable would be a direct outgrowth and result of its compliance with the rules of the associations. It is in this sense that the associations are alleged to be "liable" to the University for the plaintiffs' (students') claims.

Finally, the associations suggest that the remedial powers of federal courts must stop short of interference with the "autonomous functions" of associations which have long governed the workings of intercollegiate athletics. The simple answer to this contention is that the rules of such associations, if found violative of federal law, must surely be so declared by a federal court.

Accordingly IT IS ORDERED:

1. THAT the motion of the third-party defendant National Collegiate Athletic Association to dismiss the third party complaint is denied.
2. THAT the motion of the third-party defendant Association for Intercollegiate Athletics for Women to strike or dismiss with prejudice the third party complaint is denied.