**Gale COKER, et al., Appellants,**

v.

**Dr. Louis W. SULLIVAN, Secretary, U.S. Department of Health and Human Services, et al.**

No. 89–5155.

United States Court of Appeals, District of Columbia Circuit.

Argued April 2, 1990.

Decided May 4, 1990.

As Amended May 10, 1990.

Glenn B. Manishin, with whom Carl S. Nadler, Washington, D.C., and Maria Foscarinis, New York City, were on the brief, for appellants. David E. Zerhusen, Washington, D.C., also entered an appearance for appellants.

Mark E. Nagle, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before EDWARDS, RUTH BADER GINSBURG, and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case concerns the justiciability of a suit by homeless families and advocacy organizations to require the Department of Health and Human Services (HHS or the Department) to monitor and enforce state compliance with state Emergency Assistance plans. The district court granted HHS' motion to dismiss for lack of standing, and plaintiffs have appealed. We affirm the district court's dismissal of the case because we conclude that plaintiffs have no right of action under the Administrative Procedure Act (APA). We therefore pretermit an inquiry into plaintiffs' standing to sue.

### I.

We explain first the statutory and regulatory structure of the Emergency Assistance program and the procedural history of this case. Emergency Assistance (EA) is an optional component of the multicomponent Aid to Families with Dependent Children (AFDC) program established by Title IV–A of the Social Security Act (the Act). *See* 42 U.S.C. §§ 603(a)(5), 606(e)(1). AFDC is a matching grant program in which state participation is voluntary but, in practice, universal. The EA component, however, is offered by only 28 states. Congressional prescriptions regarding EA are slim. States have more control over the services they provide in their EA programs than in the bulk of their AFDC plans. *See* 42 U.S.C. § 606(e)(1). States also have greater leeway in establishing eligibility standards for EA. *See Quern v. Mandley*, 436 U.S. 725, 98 S.Ct. 2068, 56 L.Ed.2d 658 (1978). Participating states, however, must include as potential EA beneficiaries all AFDC recipients. *See Blum v. Bacon*, 457 U.S. 132, 102 S.Ct. 2355, 72 L.Ed.2d 728 (1982).

Under provisions of the Act codified in section 602 of the United States Code, state overall AFDC plans must include, among other terms, a commitment to "make such reports, in such form and containing such information, as [HHS] may from time to time require, and comply with such provisions as [HHS] may from time to time find necessary to assure the correctness and verification of such reports." 42 U.S.C. § 602(a)(6). Another section of the Act, entitled "Deviation from plan," provides that HHS "shall make no further payments to" any state if, "after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of [the state] plan," the Department finds that administration of the plan fails to comply substantially with the requirements of section 602. *See id.* § 604(a).

It bears emphasis that EA, for states that participate in the program, is but one part of the overall AFDC plan the state submits to HHS. No Title IV–A provision expressly orders states to adhere to their approved plans. At least one federal district court, however, has held that the Act requires states to comply with the EA components of their plans. *See Koster v. Webb*, 598 F.Supp. 1134 (E.D.N.Y.1983).

HHS' regulations explicitly require state compliance with AFDC plan provisions as well as with the Act and detail a spectrum of review and compliance procedures. States must apply eligibility conditions "on a consistent and equitable basis throughout the State" and must not exclude groups or individuals from eligibility "on an arbitrary or unreasonable basis." 45 C.F.R. § 233.10(a)(1). State plans offering EA must prescribe that assistance "will be given forthwith." *Id.* § 233.120(a)(5).

HHS' regulations provide that the Department "conducts a review" of state AFDC plan administration to determine whether the states are adhering to "Federal requirements and to the substantive legal and administrative provisions of their approved plans." *Id.* § 201.10(a). Each state is "required to carry out a continuing quality control program" and HHS "conducts a continuing observation of these State systems." *Id.* § 201.10(b). "Annually, or at such frequencies as are considered necessary and appropriate, the operations of the State agency are audited" by the Department for compliance with the "Act and State plan." *Id.* § 201.12(a). If audits or reviews "reveal serious problems with respect to compliance with any Federal requirement, the State agency is required to correct its practice." *Id.* § 201.13(b). Finally, the regulations authorize withholding of payments to a state when the state's plan fails to comply with a "Federal requirement." *Id.* § 201.6(a).

This controversy began when the Cokers and the Porters, two homeless families, the National Union for the Homeless (NUH), an organization of homeless and formerly homeless people, and the National Coalition for the Homeless (NCH), an advocacy and service organization, filed a complaint in the district court seeking declaratory and injunctive relief against HHS. The plaintiffs asserted a right of action under the

APA. Specifically, they alleged that HHS had acted arbitrarily, capriciously, and contrary to law by (1) failing to comply with its regulations, and (2) demanding state compliance only when states improperly granted assistance and not when states wrongly denied benefits. *See* 5 U.S.C. § 706(2). Plaintiffs also charged that the Department had unlawfully abdicated its monitoring and enforcement duties under the Act. *See* 5 U.S.C. § 706(1).

HHS moved to dismiss on the grounds that plaintiffs: (1) lacked standing; (2) had no right of action under the APA because they had other adequate relief, *see Council of and for the Blind v. Regan*, 709 F.2d 1521, 1532 (D.C.Cir.1983) (en banc); and (3) lacked an APA claim under *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). The district court granted the motion for lack of standing and did not address the government's other arguments. Plaintiffs appealed.

## II.

Plaintiffs' standing presents a question of first impression in this court. The difficulty of this question is highlighted by the district court's evident discomfort in relying on standing to dismiss the case. *See Coker v. Bowen*, 715 F.Supp. 383, 388 (1989) (Memorandum Dismissing Complaint for Lack of Standing) (noting that standing decisions relying on the questionable capacity of the requested relief to redress the alleged injury have been "harshly criticized as manipulative and as substitutes for the majority's opinions of the merits of the cases," but recognizing "new underlying rationale" of "separation of powers"). The district court's discomfort is understandable for, to the extent the standing inquiry asks *who* may sue, the Cokers and the Porters, as EA beneficiaries, would appear to be vitally interested parties.[1] The concern here, however, is *what* a plaintiff must state and show to obtain a court order compelling an oversight agency to

engage in more comprehensive monitoring and enforcement.

As plaintiffs' counsel conceded at oral argument, this suit differs from previous cases in which this court has found standing on the part of plaintiffs demanding increased federal oversight. Plaintiffs do not allege that the states have misused federal money; plaintiffs charge instead that the states should be doing more with federal money and their own funds. *Cf. Women's Equity Action League v. Cavazos*, 879 F.2d 880 (D.C.Cir.1989) (plaintiffs, enrolled in or employed by state educational institutions, had standing to challenge federal subsidization of the institutions, which allegedly engaged in federally-prohibited discrimination). Even if the Act requires states to conform to the optional provisions of their plans, states confronted with HHS' enforcement efforts would not necessarily provide EA to plaintiffs but might instead alter the plans to achieve compliance. *Cf. International Ladies' Garment Workers' Union (ILGWU) v. Donovan*, 722 F.2d 795 (D.C.Cir.1983) (factory worker union had standing to challenge the repeal of regulations barring employment of homeworkers, because employer compliance with the regulations would *necessarily* prevent the alleged injury, homeworker competition with factories).

■ These differences raise the question whether plaintiffs' theory of injury satisfies current Article III doctrine that the alleged injury be fairly traceable to the challenged action and redressable by the requested relief. *But cf. Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n. 4, 106 S.Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986) (association had standing to demand that the President impose sanctions on Japan for that nation's failure to comply with whale harvest quotas set by international agreements). We need not resolve this difficult question, however, because we are convinced that even if one or more of the plaintiffs have standing, plaintiffs nonetheless lack con-

---

1. Under current standing doctrine, of course, plaintiffs must not only allege an actual or threatened injury but must plausibly plead a causal connection between the injury they identify and the illegal action they target. *See infra* p. 87.

gressional authorization to bring this action.

Although standing is usually a threshold inquiry, both the Supreme Court and this Circuit have long recognized the propriety of avoiding difficult, constitutionally-based justiciability issues when a case is more simply resolved on another basis. *See Secretary of the Navy v. Avrech,* 418 U.S. 676, 677–78, 94 S.Ct. 3039, 3040, 41 L.Ed.2d 1033 (1974); *Chandler v. Judicial Council,* 398 U.S. 74, 89, 90 S.Ct. 1648, 1656, 26 L.Ed.2d 100 (1970); *United States v. Augenblick,* 393 U.S. 348, 351–52, 89 S.Ct. 528, 531, 21 L.Ed.2d 537 (1969); *Lorion v. Nuclear Regulatory Comm'n,* 785 F.2d 1038, 1041 (D.C.Cir.1986); *National Wildlife Fed'n v. United States,* 626 F.2d 917, 924–26 & n. 16 (D.C.Cir.1980); *Adams v. Vance,* 570 F.2d 950, 954 n. 7 (D.C.Cir.1978) (per curiam); *Chinese Am. Civic Council v. Attorney General,* 566 F.2d 321, 325 & n. 9 (D.C.Cir.1977); *Marker v. Shultz,* 485 F.2d 1003, 1004 (D.C.Cir.1973). We believe this path especially appropriate here, because the alternative rationale on which we rely is also a jurisdictional limitation, although one derived from statute rather than the Constitution.

### III.

■ Turning now to this dispositive issue, we hold that the APA does not provide a right of action for plaintiffs to demand from a court an order directing HHS to monitor and enforce the Social Security Act's purported command that states comply with the provisions of state EA plans. Congress has not limited HHS' discretion to control its enforcement of the EA component of the AFDC program. Injured parties may secure state compliance with EA pledges through fair hearing procedures and, if state noncompliance indicates a pattern violative of federal law, through direct suits against the states. The federal courts, however, lack authority to spur or to channel the Department's enforcement efforts in the manner plaintiffs demand.

■ The Supreme Court explained in *Heckler v. Chaney, supra,* that the APA does not usually provide a right to judicial review of an agency's failure to enforce statutory provisions entrusted to agency supervision. The Court noted that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *See id.* 470 U.S. at 831, 105 S.Ct. at 1655. Unless Congress has provided "meaningful standards for defining the limits of that discretion," the APA does not permit the courts to interfere. *Id.* at 834, 105 S.Ct. at 1657.[2]

The Social Security Act provides no reviewable standards circumscribing HHS' enforcement discretion over the EA component of the AFDC program. Although the Act empowers the Department to demand reports and other information regarding state AFDC plans, the Act nowhere commands the Department to request particular information. *See* 42 U.S.C. § 602(a)(6). The statute mandates that HHS withhold federal funds from a state AFDC plan if the Department finds "that in the administration of the plan there is a failure to comply substantially with any provision required by section [602]." *Id.* § 604(a). The Act provides no guidelines, however, to channel HHS' decision whether a state has failed to comply substantially, and the Department reasonably maintains that a compliance failure solely within the EA component of a state's multicomponent AFDC plan is not necessarily substantial. Moreover, plaintiffs have not pointed to an explicit provision of section 602 with which any particular state's EA program fails to

---

**2.** Plaintiffs contend that *Heckler v. Chaney* "does not bar actions in which the extent of agency discretion turns on a construction of the agency's substantive statute." Plaintiffs' Supplemental Brief at 19. We assume that plaintiffs are entitled to a judicial resolution of the question whether the Social Security Act affords HHS the enforcement discretion the Department claims. This question, however, is precisely the one we resolve below when we determine under the *Heckler v. Chaney* inquiry that plaintiffs are not entitled to have a court monitor HHS enforcement.

comport.[3]

To the extent plaintiffs rely not on the statutory language but on HHS' regulations, these regulations impose no more meaningful a limitation on the Department's enforcement discretion than does the Act. The regulations, like the Act, address monitoring and enforcement of state AFDC plans as a whole, not just their EA adjuncts. Plaintiffs have not charged that HHS has failed to regulate state AFDC plans altogether.[4] The regulation governing withholding of funds essentially tracks the statutory language. *See* 45 C.F.R. § 201.6. And the regulations governing HHS' reviews and audits do not impose any specific schedule or time frame on the Department. *See id.* §§ 201.10, 201.12.

*Heckler v. Chaney* explained that the presumptive unreviewability of enforcement decisions stems from the recognition that an agency choice not to enforce generally involves a complicated balancing of factors peculiarly within the agency's expertise. *See* 470 U.S. at 831, 105 S.Ct. at 1655. The agency must assess whether its resources are best spent on one violation or another, whether the agency is likely to succeed if it acts, whether the requested enforcement action fits the agency's overall policies, and whether the agency would have enough resources to undertake the requested action in any event. *See id.*

The practical judgment reflected in *Heckler v. Chaney* is especially evident in this case, in which plaintiffs acknowledge that HHS has many programs to supervise and may consciously have decided to concentrate monitoring on some elements of the AFDC program rather than others. This court should not steer the Department's resources and shape its priorities when we lack knowledge of the matters competing for the Department's attention. *See Antone v. Block,* 661 F.2d 230, 234 n. 6 (D.C. Cir.1981).

We have previously expressed hesitation to position this court as supreme supervisor of federal agency enforcement, a role more effectively performed by the Executive under congressional scrutiny. *See Council of and for the Blind,* 709 F.2d at 1532. As we explained in that case, the APA specifically provides that, if other remedies are adequate, federal courts will not oversee the overseer. *See* 5 U.S.C. § 704. The alternative remedies available to plaintiffs here resemble those this court found sufficient to bar APA review in *Council of and for the Blind.*

Federal law guarantees "any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness" an opportunity for a "fair hearing" before a state administrative agency. *See* U.S.C. § 602(a)(4). These state administrative hearings may be subject to judicial review. *See* 45 C.F.R. § 205.10(a)(17) (states must give written notice of administrative decision and of possibility of judicial review, if it is available). To the extent plaintiffs complain that state plans violate federal law, they have a right of action against offending states under the Supremacy Clause or 42 U.S.C. § 1983. *See, e.g.,*

**3.** Plaintiffs contend they have alleged that some state plans violate section 602's requirements that a plan be "in effect" throughout the state and provide fair hearings to applicants whose benefit claims are refused. *See* Plaintiffs' Supplemental Brief at 14 n. 22, 17 n. 25. Plaintiffs, however, have identified only a paragraph in which they allege that Illinois' EA plan violates the "equitable treatment" requirement of 45 C.F.R. § 233.10(a)(1), as interpreted in HHS Action Transmittal No. SSA–AT–82–28 (Nov. 5, 1982) and *Blum v. Bacon, supra.* The complaint allegation that "Illinois furnishes emergency shelter only to families receiving Aid to Families with Dependent Children" does not constitute a violation of the regulation as interpreted in either the Action Transmittal or *Blum v. Bacon.* Plaintiffs, therefore, have not made any

viable, concrete claim that state plans contravene any federal mandate independent of the purported requirement that states comply with the promises in their plans.

**4.** Because the Act and HHS' regulations address monitoring and enforcement of the entire AFDC program, plaintiffs cannot tenably claim that the Department has "adopted a general policy which is in effect an abdication of its statutory [or regulatory] duty." *See Adams v. Richardson,* 480 F.2d 1159, 1162 (D.C.Cir.1973) (en banc). We need not decide therefore whether such a claim remains viable under the APA after *Heckler v. Chaney. See* 470 U.S. at 833 n. 4, 105 S.Ct. at 1656 n. 4.

*Blum v. Bacon, supra* (Supremacy Clause); *Quern v. Mandley, supra* (42 U.S.C. § 1983). Indeed, at least one federal court has held that plaintiffs have a section 1983 action against a state to force its compliance with its plan provisions. *See Koster v. Webb, supra.* State court actions against the states, moreover, may be available to redress violations of law. *See Littlefield v. State Dep't of Human Servs.,* 480 A.2d 731 (Me.1984).[5]

Actions directly against the states are not merely adequate; they are also more suitable avenues for plaintiffs to pursue the relief they seek. The states are the immediate cause of the injuries of which the Cokers and the Porters complain; these plaintiffs ask HHS not to refrain from harming them, but rather to cure their state-created injuries.[6] *Cf. California Ass'n of the Physically Handicapped v. FCC,* 778 F.2d 823, 825 (D.C.Cir.1985). In view of the states' role as primary administrators of the AFDC and EA programs and the absence of any indication that Congress intended to permit suit directly against HHS, the APA should not be interpreted to permit plaintiffs to bypass direct relief against the states.

### *Conclusion*

In *Council of and for the Blind,* this court acknowledged that the APA recognizes the inappropriateness of charging courts with perpetual oversight of agency enforcement and therefore denies federal court supervision if other avenues of relief are adequate. Similarly, in *Heckler v. Chaney,* the Supreme Court explained that judges are not well positioned to guide

agency enforcement and noted the resultant presumption against the reviewability of agency oversight choices. Because the *leitmotiv* in these cases forecloses federal court review of plaintiffs' claims under the APA, we do not pass on the question of plaintiffs' standing.

For the reasons stated, the district court's dismissal of plaintiffs' complaint is affirmed.

---

**5.** Plaintiffs attempt to distinguish *Council of and for the Blind* by arguing that fair hearings and suits against the individual states cannot provide the systemic relief plaintiffs seek or any relief against the federal government. *Council of and for the Blind,* however, rejected quite similar arguments. *See* 709 F.2d at 1532. Suits against the states may well be as effective in providing systemic relief as judicial oversight of federal government enforcement. Furthermore, the critical injury plaintiffs allege is the denial of EA to eligible families, and this injury can be redressed without any relief against the federal government. As plaintiffs acknowledge, *Council of and for the Blind* interpreted the APA

"to bar suits where a plaintiff's *injury* may be remedied in another action, even if that remedy would have no effect upon the challenged agency action." Plaintiffs' Supplemental Brief at 13.

**6.** Plaintiff organizations also complain that they have been injured because they have been deprived of information they could use to lobby or otherwise to persuade the states to provide EA in accordance with state plans. This informational deprivation, however, only hinders the organizations' goals because of the *states'* failure to dispense EA, and document their performance, as they have promised.