Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Filed October 8, 2004

No. 03-5169

NATIONAL WRESTLING COACHES ASSOCIATION, ET AL.,
APPELLANTS

v.

DEPARTMENT OF EDUCATION,
APPELLEE

————

On Petition for Rehearing

————

Before: EDWARDS and HENDERSON, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

## O R D E R

Upon consideration of appellants' petition for rehearing, it is

**ORDERED** that the petition be denied.

*Per Curiam*

**FOR THE COURT:**

Mark J. Langer, Clerk

A *per curiam* statement is attached.

A statement of *Senior Circuit Judge* WILLIAMS dissenting from the denial of rehearing is also attached.

1

*Per Curiam*: Appellants have petitioned for rehearing and rehearing *en banc*. On the record at hand, there is no reason for the panel to revisit this case and there is no valid basis justifying *en banc* consideration of this matter. We offer this brief statement merely to respond to an argument raised in the dissenting statement.

As an initial matter, we note that appellants have offered nothing but unadorned speculation to support their claim that a favorable decision from this court would redress their alleged injuries. The Supreme Court has made it clear that plaintiffs cannot rely on such speculation to satisfy the redressability prong of standing. The opinion for the court in this case invokes this well-established principle of law. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 936–40 (D.C. Cir. 2004).

The opinion for the court also makes it clear that, even if appellants had standing to pursue their claims in this case, the availability of a private cause of action directly against universities bars this lawsuit against the agency. *Id*. at 945–46. The court's decision in *Washington Legal Foundation v. Alexander*, 984 F.2d 483 (D.C. Cir. 1993), is controlling on this point, and appellants have never been able to clear the hurdle of this precedent.

The dissent's attempt to distinguish *Washington Legal Foundation* is perplexing. The dissent argues that *Washington Legal Foundation* can be distinguished, on the ground that *Washington Legal Foundation* involved only claims of statutory violations, "whereas here plaintiffs allege Constitutional violations of which the private educational institutions could not possibly be guilty." The problem with this argument is that it is premised on the faulty assumption that a plaintiff may avoid the dictates of *Washington Legal Foundation* merely by reciting constitutional provisions that obviously do not reflect the gist of the complaint. This is an untenable proposition, as this case demonstrates.

The heart of appellants' claim in this case is that universities have taken actions that violate Title IX and Title IX's implementing regulations. It is clear beyond dispute that

appellants' asserted injuries arise solely from the universities' actions allegedly taken in derogation of Title IX. Indeed, the "constitutional violations" allegedly committed by public educational institutions involve no substantive claims beyond those that would otherwise be cognizable under Title IX.

As the dissent concedes, appellants have consistently maintained that, in subscribing to Department of Education enforcement policy interpretations, the universities have themselves adopted unlawful policies and engaged in unlawful activities. *See*, *e.g.*, Appellants' Br. at 8 ("When a school cuts or caps a team solely to comply with gender proportionality, it discriminates in violation of Title IX, 29 U.S.C. § 1681(a), the Title IX regulations, 34 C.F.R. § 106.41(a), and (for public schools) the Equal Protection Clause of the Fourteenth Amendment."). In short, appellants have argued throughout this litigation that, in adhering to the Department's enforcement policy interpretations, the universities have engaged in intentional discrimination that Title IX prohibits. This being the case, *Washington Legal Foundation* is obviously controlling, because appellants have a private cause of action directly against the universities to seek redress for any proscribed acts of sex discrimination committed by the universities. Appellants' action against the agency is therefore barred under 5 U.S.C. § 704 (2000).

The dissent ignores the fact that the Department's enforcement policy interpretations are not binding regulations. They do not carry the force of law, and universities are not bound to follow the policy interpretations. Therefore, the mere existence of the Department's policy interpretations causes appellants no cognizable injury. Appellants are only injured when, as they allege, the universities take actions that violate Title IX and Title IX's implementing regulations. There are no viable constitutional claims beyond these alleged statutory injuries. Thus, appellants have a fully adequate private cause of action directly against the universities to seek redress for their alleged injuries.

Finally, this case surely cannot be distinguished from *Washington Legal Foundation*, as the dissent argues, on the

ground that the agency here "is charged with bullying [the educational] institutions into adopting unlawful practices." The only thing the Department has done here is issue non-binding enforcement policy interpretations, which is hardly evidence of "bullying." But even if the Department might be seen as a bully, this does not change the fact that appellants still have a private cause of action against the universities for any acts that the educational institutions take in violation of Title IX and Title IX's implementing regulations.

WILLIAMS, *Senior Circuit Judge*, dissenting from the denial of rehearing: The panel found that the plaintiffs inadequately alleged the causal connection between the Department's actions and their injuries and the likelihood that judicial action could redress the injuries. It further argued that the plaintiffs have an adequate remedy against the colleges and universities that actually terminated men's sports teams, and that under our precedents the existence of this supposed remedy negates any remedy against the Department under the Administrative Procedure Act. 366 F.3d at 933–49. I discuss all three contentions in my dissent. 366 F.3d at 949–59. A few further points may be helpful.

1. *Causation.* In addressing the standing of plaintiffs who claimed to have been injured by a government agency's imposition of more stringent standards on third parties than were lawful, we have on four occasions ruled explicitly that they would meet the causation criterion if they could show that the agency's allegedly illicit action was a "substantial factor" in bringing about the injurious conduct of the third parties. *Tozzi v. United States Dep't of Health and Human Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001); *Competitive Enterprise Inst. v. National Highway Traffic Safety Admin.*, 956 F.2d 321, 323 (D.C. Cir. 1992); *Competitive Enterprise Inst. v. National Highway Traffic Safety Admin.*, 901 F.2d 107, 114 (D.C. Cir. 1990); *Community for Creative Non–Violence v. Pierce*, 814 F.2d 663, 669 (D.C. Cir. 1987). In two we have implicitly applied that standard. *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 493 (D.C. Cir. 2004) (plaintiffs must show that it was "substantially probable" that the challenged standard was "responsible" for the price increase injuring plaintiffs); *Block v. Meese*, 793 F.2d 1303, 1308–09 (D.C. Cir. 1986) (finding plaintiffs have alleged a sufficient injury because government report "creates a disincentive" for third parties to obtain films from plaintiffs). Here the court failed to even acknowledge the circuit's principle, much less follow it in substance. This failure is all the more acute because this case was resolved on the pleadings, so that only an *allegation* of causation was necessary. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Indeed, much of the court's language—let alone its factual analysis—makes plain that it was not following a "substantial factor" test. See Maj. Op., 366

F.3d at 939 ("As the Department emphasized when issuing its 1996 clarification, nothing in the Three–Part Test *requires* schools to eliminate or cap men's wrestling or any other athletic program.") (emphasis added); *id.* at 940 ("Moreover, other reasons unrelated to the challenged legal requirements *may* continue to motivate schools . . . .") (emphasis added); *id.* at 943 ("Finally, the GAO also found that several other factors also contributed to schools' decisions as much or more than 'gender equity considerations' . . . .").

The present decision appears to be a random exception to circuit precedent. The Supreme Court has never explicitly approved or rejected our "substantial factor" test, but under our standard principles we should apply that test unless or until the Court tells us otherwise. *LaShawn v. Barry*, 87 F.3d 1389, 1393–97 (D.C. Cir. 1996) (en banc).

2. *Redressability*. The majority thought that redressability was lacking in large part because, even if the 1996 Clarification were found invalid, Title IX and the 1975 regulations would continue to apply. See Maj. Op., 366 F.3d at 944. But the 1996 Clarification wrought a material change in the pre-existing regulatory condition. It created three safe harbors for colleges and universities, of which the clearest was achieving strict proportionality between men's and women's enrollment and their team sport participation, without regard to interest or skill. See 366 F.3d at 950 (discussing mention of such a "safe harbor" in letter from the Department). No such safe harbor existed before the 1996 Clarification. Neither the statute nor the formal regulations said anything about strict proportionality of this sort. They may well have allowed it (that issue in part involves the merits), but they did not express either a congressional or departmental view that achieving such proportionality would win a college or university a legal pass. For colleges and universities interested in keeping their federal funding and avoiding costly litigation (and how many would not be!), the Clarification thus created strong pressure to achieve proportionality. Among the actions that would move a college or university toward proportionality, dropping men's teams was a relatively cheap device. Unsurprisingly, colleges and universities responded to the

pressure by including such drops as part of their solutions—or so at any rate plaintiffs quite credibly allege.

Redressability follows logically. If the 1996 Clarification was a substantial factor in leading colleges and universities to discard teams, its deletion can be expected to cause many to restore teams. A probabilistic benefit is adequate to support standing. "Redressability examines whether the relief sought . . . will *likely alleviate* the particularized injury alleged by the plaintiff." *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (en banc) (emphasis added). See also, e.g., *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (requiring "substantial likelihood" that relief will remedy injury). It would be a novel principle of administrative law that persons disadvantaged by a new, stringent interpretation of a regulation could not challenge it just because the underlying regulation would remain in place once the challenged interpretation was held unlawful.

3. *Alternative remedy*. In *Washington Legal Foundation v. Alexander*, 984 F.2d 483 (D.C. Cir. 1993) ("*WLF*"), plaintiffs sued the Department of Education, alleging that it had failed "to issue and enforce" regulations withdrawing federal funds from colleges and universities that were, according to the complaint, violating Title VI in their administration of race-based scholarship programs. *Id.* at 485. We affirmed the district court's dismissal on the basis of the APA's limitation of judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. We reasoned that this barred a suit against the Department because a person suffering discrimination by a college or university in violation of Title VI had an adequate alternative remedy—a right of action under Title VI against the discriminating institution itself. See *WLF*, 984 F.2d at 485.

In my initial dissent I reasoned that *WLF* could not apply to the extent that the educational institutions' conduct here was perfectly legal—though induced by Department action that the plaintiffs said was illegal. 366 F.3d at 958–59.

Plaintiffs, however, consistently allege that the educational institutions' acts are also illegal; given that argument, my prior reasoning appears largely inapplicable. Nonetheless, it remains the case that *WLF* by no means bars this suit.

First, *WLF* involved only claims of statutory violations, whereas here plaintiffs allege Constitutional violations of which the private educational institutions could not possibly be guilty. See Appellants' Br. at 8 ("USDE's Title IX policies restrict, abrogate, or dilute Equal–Protection rights") (internal quotation marks omitted); Am. Compl. ¶ 3, *reprinted in* Joint Appendix 12 ("Plaintiffs seek declaratory and injunctive relief to compel USDE to comply with the Equal Protection component of the Due Process Clause, U.S. Const. amend. V."). As the private universities and colleges do not have the capacity to violate the Constitution, claims of such violations can run only against the Department (and/or state colleges and universities), and there is no remedy against the private institutions at all, much less an adequate one.

More important, in *WLF* and kindred cases the agency was accused only of failing to *stop or penalize* illegal behavior by educational institutions. Here, by contrast, the agency is charged with bullying those institutions into adopting unlawful practices.

In *WLF*, the Department of Education was alleged to have either refused to enforce an existing policy against race-based minority scholarships or abdicated its responsibility to enforce Title VI by failing to generate a policy prohibiting such scholarships. 984 F.2d at 486. It was the preexisting independent behavior of colleges and universities—operating the minority scholarship programs in such a way as to violate Title VI—that caused the alleged injuries. In this setting, we held that a suit directly against the universities was an adequate alternative remedy, barring the suit against the agency. *Id.* at 486. Exactly the same relationship—mere agency failure to stop or penalize illegal behavior by others—appears to characterize *all* our decisions in the *WLF* line. *Godwin v. Sec'y of Housing and Urban Development*, 356 F.3d 310, 311–12 (D.C. Cir. 2004) (per curiam); *Women's*

*Equity Action League v. Cavazos*, 906 F.2d 742, 744–45, 751 (D.C. Cir. 1990); *Coker v. Sullivan*, 902 F.2d 84, 85, 89–90 (D.C. Cir. 1990); *Council of and for the Blind v. Regan*, 709 F.2d 1521, 1531–32 (D.C. Cir. 1983) (en banc). And the same appears to be true for out-of-circuit precedents that take a *WLF* approach. See *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191–92 (4th Cir. 1999); *New York City Employees' Retirement System v. SEC*, 45 F.3d 7, 14 (2d Cir. 1995).

Whereas it is quite logical to have plaintiffs obtain relief through actions directly against wrongdoers when the agency's only role is neglect, it makes little sense to extend *WLF* to a context where the agency itself is, as alleged here, the driving force behind the illegality. In effect, the majority ruling here would have the courts scotch the snake, not kill it.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Filed October 8, 2004

No. 03-5169

NATIONAL WRESTLING COACHES ASSOCIATION, ET AL.,
APPELLANTS

v.

DEPARTMENT OF EDUCATION,
APPELLEE

————

On Petition for Rehearing En Banc

————

Before:  GINSBURG, *Chief Judge*, EDWARDS, SENTELLE,
HENDERSON, RANDOLPH, ROGERS, TATEL, GARLAND, ROBERTS,
*Circuit Judges*

## O R D E R

Appellants' petition for rehearing *en banc* and the response thereto have been circulated to the full court.  The taking of a vote was requested.  Thereafter, a majority of the judges of the court in regular, active service did not vote in favor of the petition.  Upon consideration of the foregoing, it is

**ORDERED** that the petition be denied.

*Per Curiam*

**FOR THE COURT:**

Mark J. Langer, Clerk

*Circuit Judge* TATEL did not participate in this matter.

*Chief Judge* GINSBURG would grant rehearing *en banc* for the reasons stated in *Senior Circuit Judge* WILLIAMS's dissent from the denial of rehearing.